# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REGGIE FLYNN PACKINGHAM, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-17-195-SPS ) |
| Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Reggie Flynn Packingham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-seven years old at the time of the administrative hearing (Tr. 210, 214). He has an eighth grade education and vocational training in masonry, and has worked as a bricklayer and bricklayer helper (Tr. 47, 69). The claimant alleges he has been unable to work since December 1, 2005, due to diabetes, anxiety, depression, degenerative disc disease, tendinitis in his hands, attention deficit hyperactivity disorder, hepatitis C, and liver damage (Tr. 237).[2]

## Procedural History

On September 3, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 210-19). His applications were denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 3, 2016 (Tr. 18-33). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Due to a final decision on a prior application, the ALJ found that the claimant's earliest possible onset date in this case was June 6, 2009 (Tr. 18).

-3-

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. The claimant concedes that the ALJ's decision under Title II, as applied to the evidence prior to his date last insured of September 30, 2012, is supported by substantial evidence, but challenges the ALJ's denial of benefits under Title XVI in light of evidence in the record following his application date. The ALJ found that, since the claimant's application date of September 3, 2014, he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except such work should not involve concentrated exposure to dust, odors, fumes or pulmonary irritants (Tr. 29). Additionally, the ALJ found that the claimant could perform simple and routine tasks, work in proximity to co-workers, but should have no more than occasional direct work interactions with them, and could occasionally interact with the general public (Tr. 29). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, inspector packer, bakery racker, and electrical assembler (Tr. 31- 32).

**Review**

The claimant contends that the ALJ erred by failing to properly analyze the opinions of treating physician Dr. Adlaon and social worker Ivora Sensibaugh. The Court agrees and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant's diabetes mellitus with neuropathy, chronic obstructive pulmonary disease, anxiety, and depression were severe impairments, and that

-4-

his degenerative disc disease of the cervical spine, carpal tunnel syndrome, and alcohol use were non-severe (Tr. 27). The medical evidence relevant to this appeal reveals that the claimant was admitted to the Red Rock Adult Crisis Unit on January 14, 2008, after reporting anxiety, panic attacks, and suicidal ideations following the loss of his job (Tr. 315-35). A discharge assessment dated January 16, 2008, indicated that the claimant was stabilized and diagnosed with depressive disorder not otherwise specified and anxiety disorder not otherwise specified (Tr. 329-31).

A mental health screening interview conducted at the outset of the claimant's incarceration on January 23, 2012, revealed that he displayed significant symptoms of anxiety, but the exam was otherwise normal (Tr. 415-16). Thereafter, the claimant was treated for anxiety and depression during the two months he was incarcerated (Tr. 372-442). On February 4, 2012, the claimant was approved to work in the kitchen, and a mental status examination conducted on February 22, 2012, was normal (Tr. 394, 400).

After his release from incarceration, the claimant established care with social worker Ivora Sensibaugh on April 3, 2012 (Tr. 459-60). At this initial visit, Ms. Sensibaugh noted the claimant's mood was anxious and his affect was agitated (Tr. 459). She stated that the claimant had anxiety and depression, lacked coping skills, and would benefit from professional support (Tr. 460). Thereafter, Ms. Sensibaugh counseled the claimant monthly between April 2013 and May 2015 (Tr. 551-75). On September 16, 2014, Ms. Sensibaugh completed a Mental Status Form wherein she opined that the claimant could remember, comprehend, and carry out simple instructions on an independent basis, but noted that he had not been able to work under pressure or stress

(Tr. 458). She diagnosed the claimant with chronic adjustment disorder with mixed anxiety and depression (Tr. 458). On June 24, 2015, Ms. Sensibaugh wrote a letter wherein she affirmed the claimant's diagnosis of chronic adjustment disorder with mixed anxiety and depression, and indicated that his prognosis was good with stressors reduced (Tr. 549). Additionally, Ms. Sensibaugh stated that the claimant was unable to relate to people in a positive way, which she observed during office visits (Tr. 549).

On October 20, 2014, Kathleen Ward, Ph.D., conducted a consultative psychological examination (Tr. 462-66). Dr. Ward indicated that the claimant was in constant motion, made good eye contact, hugged his body, rocked, and bounced his leg during the interview (Tr. 464). She found the claimant's thought processes were logical and organized, his attention and concentration appeared "fairly good," and that he had some deficits in social judgment and problem solving (Tr. 464-65). Dr. Ward also found the claimant appeared to be a somewhat unreliable historian, and that his presentation was consistent with amphetamine intoxication, pointing out that the records she reviewed did not reflect the same level of fidgety movement (Tr. 465). She assessed the claimant with alcohol use disorder and unspecified anxiety disorder (Tr. 465).

On May 19, 2015, Dr. Wellie Adlaon completed a Medical Source Statement ("MSS"). Dr. Adlaon opined that the claimant would be absent from work about three or more days per month due to "excessive anxiety and worry, restlessness/feeling keyed up on edge, recurrent unexpected panic attacks, and isolates" (Tr. 578). As to unskilled work requirements, Dr. Adlaon opined that in a routine work setting, the claimant could make simple work-related decisions and respond appropriately to supervision, but could not

understand, remember, or carry out simple instructions; respond appropriately to co-workers or work situations; deal with changes; maintain concentration and attention for extended periods; handle normal work stress; or attend any employment on a sustained basis (Tr. 579). Dr. Adlaon further stated that the claimant's impairments and symptoms would cause him to take unscheduled breaks during an eight-hour work day (Tr. 579). Additionally, Dr. Adlaon completed a Mental RFC Questionnaire, wherein he stated that the claimant was limited but satisfactory in his ability to understand, remember, and carry out very short and simple instructions; make simple work-related decisions; and be aware of normal hazards and take appropriate precautions (Tr. 582). Dr. Adlaon also stated that the claimant was seriously limited but not precluded in his ability to remember work-like procedures, maintain attention for a two hour segment, sustain an ordinary routine without special supervision, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and understand, remember, and carry out detailed instructions (Tr. 582-83). Dr. Adlaon further stated that the claimant was unable to meet competitive standards in his ability to maintain regular attendance and be punctual within customary, usually strict tolerances, work in coordination with or proximity to others without being unduly distracted, complete a normal work day and work week without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, deal with normal work stress, set realistic goals or make plans independently of others, deal with the stress of semiskilled

and skilled work, interact appropriately with the general public, and maintain socially appropriate behavior (Tr. 582-83). Dr. Adlaon concluded that the limitations he described had been applicable since April 3, 2012 (Tr. 583-84).

On January 6, 2015, state agency psychologist Phillip Massad, Ph.D., completed a Mental RFC Assessment wherein he found that the claimant was markedly limited in his ability to understand and remember detailed instructions, and maintain attention and concentration for extended periods, and was moderately limited in his ability to interact appropriately with the general public (Tr. 97-99). Dr. Massad explained that the claimant had sufficient concentration and memory to complete simple, repetitive tasks, but not complex tasks in light of the medical evidence of record and his activities of daily living (Tr. 99).

On June 9, 2015, state agency psychologist William H. Farrell, Ph.D., completed a Mental RFC Assessment wherein he found that the claimant was markedly limited in his ability to understand and remember detailed instructions, but retained the capacity to understand and remember simple one and two-step instructions (Tr. 124-25). Dr. Farrell also found the claimant was markedly limited in his ability to carry out detailed instructions, and moderately limited in his ability to maintain attention and concentration for extended periods, but retained the capacity for concentration, persistence, or pace, for one or two-step instructions for two-hour periods over an eight-hour day and forty-hour work week (Tr. 125). As to the claimant's social interaction limitations, Dr. Farrell found the claimant was moderately limited in his ability to interact appropriately with the general public and to get along with co-workers or peers without distracting them or exhibiting

-8-

behavioral extremes, but retained the social interaction capacity for routine interactions with co-workers and supervisors (Tr. 125-26).

At the administrative hearing, the claimant testified, *inter alia*, that he experiences audio and visual hallucinations "from time to time" due to uncontrolled diabetes (Tr. 62). He further testified that he goes to Life Works twice per month for anxiety medication and for alcohol relapse management counseling (Tr. 63).

In her written opinion, the ALJ summarized the claimant's testimony as well as the medical record. She gave both some and significant weight to Ms. Sensibaugh's September 2014 opinion due to her treatment relationship with the claimant as well as the consistency between her opinion and other evidence of record (Tr. 30-31). The ALJ briefly summarized Ms. Sensibaugh's July 2015 letter, but did not analyze it or assign it any weight (Tr. 30). The ALJ then gave little weight to Dr. Adlaon's opinion because it contradicted Ms. Sensibaugh's opinion, Ms. Sensibaugh treated the claimant more often, and the claimant's mental health improved with medication (Tr. 31). The ALJ did not discuss or assign any weight to Dr. Ward's consultative examination. As to the state agency psychologists, the ALJ entirely ignored their current assessments dated January 2015 and June 2015, and instead assigned little weight to their opinions covering the period through the claimant's date last insured (Tr. 31).

Medical opinions of a treating physician such as Dr. Adlaon are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*,

350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ rejects a treating physician's opinion entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ erred in her analysis of Dr. Adlaon's opinion for several reasons. First, the ALJ failed to analyze Dr. Adlaon's opinion in accordance with the *Watkins* factors outlined above. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ ] 404.1527.'"), *quoting Watkins,* 350 F.3d at 1300. Although the ALJ referenced the correct analysis at the beginning of step four, she did not mention or discuss any of the factors when analyzing

Dr. Adlaon's opinion. This analysis was particularly important here because Dr. Adlaon was the only physician in the record who treated the claimant for his mental impairments.

Additionally, Dr. Adlaon's opinion contained functional limitations that the ALJ rejected, in part, because she found the claimant's mental impairments improved with medication (Tr. 31). The ALJ supported this finding by referencing a single notation from Dr. Ward's consultative exam (Tr. 31). In making such finding, however, the ALJ mischaracterized the claimant's statement regarding the effectiveness of his medication. The ALJ stated the claimant reported his medication worked, but what the claimant *actually* reported was that his medication worked, "but not always" (Tr. 462). Furthermore, the ALJ ignored that beginning in April 2013 and continuing through May 2015, Ms. Sensibaugh consistently noted the claimant had an anxious mood and an agitated or anxious affect (Tr. 551-75). This is clearly relevant because the claimant was experiencing these anxiety symptoms while taking medication. Thus, the ALJ erred by failing to discuss *all* of the evidence related to the claimant's impairments and citing only evidence favorable to her finding of non-disability. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

The claimant also argues that the ALJ failed to properly consider Ms. Sensibaugh's July 2015 MSS. Social Security regulations provide for the proper consideration of "other source" opinions such as the opinion provided by Ms. Sensibaugh herein. *See, e. g., Frantz*

*v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06–03p, 2006 WL 2329939 at *3, *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06–03p, at *4–5; 20 C.F.R. § 416.927(f). Here, the ALJ very briefly mentioned Ms. Sensibaugh's July 2015 MSS, but wholly failed to apply these factors when evaluating it. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). Additionally, by providing limitations on the claimant's ability to interact with co-workers, but not on his ability to relate to supervisors, the ALJ engaged in picking and choosing among Ms. Sensibaugh's opinion that the claimant is unable to relate to people in a positive way. This was also error. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among

medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

Because the ALJ failed to properly evaluate the opinions of Dr. Adlaon and Ms. Sensibaugh, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If such analysis results in an adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of August, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**